1

2

3

4

O

5

6

JS - 6

7

8             UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  RUSSELL SORENSEN, on behalf  )  Case No. CV 08-02114 DDP (AJWx)
    of himself and all others   )
12  similarly situated, and on   )  **ORDER REMANDING TO STATE COURT**
    behalf of the General        )  **FOR LACK OF SUBJECT MATTER**
13  Public,                      )  **JURISDICTION**
                                 )
14                 Plaintiff,    )
                                 )
15        v.                     )
                                 )
16  JPMORGAN CHASE BANK, N.A.;   )
    CHASE HOME LENDING, A        )
17  SUBSIDIARY OF JPMORGAN CHASE )
    & CO.,                       )
18                               )
                   Defendants.   )
19  _____)

20       On June 12, 2008, this Court issued an Order to Show Cause Why

21  This Case Should Not be Remanded to State Court For Lack of Subject

22  Matter Jurisdiction.  The Court issued the Order to determine

23  whether the amount in controversy exceeds the $5,000,000 required

24  for federal jurisdiction under the Class Action Fairness Act.  <u>See</u>

25  28 U.S.C. § 1332.  After reviewing the brief submitted by Defendant

26  JP Morgan Chase Bank, the Court finds that Defendant has, at this

27

28

1   time, met the $5,000,000 amount in controversy.  The Court does not

2   address Defendant's argument regarding the "first-to-file" rule.[1]

3

4   **I.    BACKGROUND**

5       This is a class action lawsuit brought "on behalf of all

6   persons who were employed by Defendants in the State of California

7   as loan officers . . . ."  (Compl. ¶ 3.)  Plaintiff alleges three

8   California state law causes of action: (1) improper deductions and

9   failure to reimburse expenses under California Labor Code §§ 221

10  and 2802; (2) failure to provide accurate itemized wage statements

11  under California Labor Code §§ 226; (3) violation of California's

12  unfair competition law, Cal. Bus. & Prof. Code 17200 <u>et seq</u>.

13      On February 15, 2008, Plaintiff filed his original state court

14  action against Defendant.  On March 26, 2008, Defendant removed

15  this action from state court.  In its Notice of Removal, Defendant

16  alleges that there is the requisite diversity of citizenship and

17  that the amount in controversy exceeds the $5,000,000 required by

18  28 U.S.C. § 1332.

19

20

21  ──────────────────

22      [1] In its brief responding to the Order to Show Cause,
    Defendant argued both (1) that the "first-to-file" rule requires
23  that this case be transferred to the Southern District of
    California where there are similar actions pending against
24  Defendant; and (2) that this action satisfies the $5,000,000 amount
    in controversy requirement.  Plaintiff initially did not respond to
25  the Order to Show Cause, indicating that he did not oppose remand.
    However, after viewing Defendants' brief, Plaintiff filed a
26  response asking that the Court disregard the "first-to-file" issue
    for purposes of this Order to Show Cause.  The Court agrees that
27  the "first-to-file" issue is not currently before it.  The Court
    first makes certain of federal jurisdiction.  As the Order to Show
28  Cause did not concern the "first-to-file" issue, the Court does not
    address that issue here.

## II.   DISCUSSION

### A.   Legal Standard

A defendant who seeks to remove a case from state to federal court has the burden of establishing federal subject matter jurisdiction.  <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92, 97 (1921).  District courts "strictly construe the removal statute against removal jurisdiction."  <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).  A district court has authority pursuant to 28 U.S.C. § 1447(c) to remand a case to state court for lack of subject matter jurisdiction.  <u>Rains v. Criterion Sys., Inc.</u>, 80 F.3d 339, 342 (9th Cir. 1996).

The Class Action Fairness Act of 2005 expanded federal jurisdiction for large-scale class action lawsuits.  District courts have original jurisdiction over any class action in which there is diversity between at least one class member and one defendant, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.  28 U.S.C. § 1332.  For purposes of determining the amount in controversy, the putative class members' damages are aggregated.

### B.   Analysis

Here, Plaintiff's complaint does not allege a specific amount of damages.  "[W]hen the plaintiff fails to plead a specific amount of damages, the defendant seeking removal 'must prove by a preponderance of the evidence that the amount in controversy requirement has been met.'"  <u>Lowdermilk v. United States Bank Nat'l Ass.</u>, 479 F.3d 994, 998 (9th Cir. 2007) (quoting <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 683 (9th Cir. 2006)).  When it is unclear whether the amount in controversy has been satisfied, a

court may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Abrego Abrego, 443 F.3d at 690 (citations omitted).

Defendant's brief and removal petition recite several grounds for this case having met the amount in controversy.  At the time of removal, Defendant asserted that the putative class consisted of "over 1,150 loan officers." (Notice of Removal ¶ 9(f).)  In its brief, Defendant appears to make calculations based upon a class of 1300 loan officers.  Defendant also represents that it had 300 loan officers in California in the twelve months preceding filing of this class action complaint.

First, Defendant points to $2,400 in unreimbursed expenses claimed by Jimmy Trinh, a former loan officer who worked for six months with Defendant.[2]  Defendant multiplies Trinh's claimed $2,400 of unreimbursed expenses for a total unreimbursed amount of $3,200,000 for the class.  Defendant's calculations are based on the assumption that other loan officers in the class suffered the same or a similar amount of unreimbursed expenses to Trinh.  But Defendant does not submit any documentary evidence bearing out the logic of this calculation, or even provide a reason for comparing other loan officers to Trinh.  It is speculative to use Trinh, a single loan officer, as the benchmark for damages suffered by the class as a whole.

Second, Defendant points to Plaintiff's second cause of action for failure to provide itemized wage statements.  California Labor Code § 226(e) provides that an employee is entitled to recover

---

[2]Trinh apparently requested this amount in a filing with small-claims court.  (Declaration of David Schilling ¶ 3.)

1  actual damages, or a liquidated amount of $50 for the first

2  violation and $100 for each additional violation up to $4,000, and

3  reasonable attorneys' fees.  Defendant calculates a total of

4  $1,200,000 for this claim.  Defendant appears to multiply the 300

5  loan officers by the maximum statutory penalty of $4,000.

6  Defendant's brief does not explain the rationale for this

7  calculation, but the Notice of Removal offers some indication.

8  Defendant explains that Plaintiff, assuming his allegations are

9  true, would be entitled to the $4,000 penalty because he only

10  received fourteen itemized wage statements during his seven months

11  of employment.  In support of extrapolation to the class, Defendant

12  points to Plaintiff's assertion that his claims are typical of the

13  class.  (Notice of Removal ¶ 9(I).)

14      The accuracy of Defendant's calculation is inconclusive.

15  California Labor Code § 226(e) counts violations by pay period.

16  Defendant does not explain whether its loan officers' pay periods

17  span a week, two weeks, a month, or some other alternative.  Thus,

18  Defendant's method of calculation is difficult to evaluate.  The

19  Court was unable to verify where Defendant learned that Plaintiff

20  only received fourteen wage statements.  Moreover, if Plaintiff was

21  paid on a biweekly basis, it would seem that fourteen wage

22  statements over a seven-month period would be approximate the

23  number of statements that Plaintiff should have received.  Reading

24  Plaintiff's complaint to allege a policy or practice of failing to

25  provide wage statements, there is at least some basis for

26  Defendant's assertion of an amount in the $1,200,000 range,

27  although that basis is thin.

28

1    Third, Defendants discuss Plaintiff's claim for civil

2    penalties under California Labor Code § 2699.  For violations of

3    that section by a person that employs two or more employees, "the

4    civil penalty is one hundred dollars ($100) for each aggrieved

5    employee per pay period for the initial violation and two hundred

6    dollars ($200) for each aggrieved employee per pay period for each

7    subsequent violation."  Cal. Lab. Code § 2699(f)(2).  Defendants

8    assert that the failure to provide wage statements would again

9    provide the basis for this civil penalty.  Defendants further

10   explain, assuming 300 loan officers in the year preceding the

11   complaint and two pay periods per month, that the amount for this

12   claim would be $1,400,000.

13       The Court is not convinced that the claimed amount may be

14   factored into a calculation of the amount in controversy.

15   Defendants, while citing the amount of civil penalties under do

16   Cal. Lab. Code § 2699(f)(2), fail to identify that the section

17   applies "[f]or all provisions of this code except those for which a

18   civil penalty is specifically provided . . . ."  Thus, a civil

19   penalty under Cal. Lab. Code § 2699(f)(2) would seem unavailable

20   where California Labor Code § 226(e) already specifically provides

21   a civil penalty for the failure to provide wage statements.

22   Defendants offer no other basis for including civil penalties under

23   Cal. Lab. Code § 2699(f)(2) in a calculation of the amount in

24   controversy.

25       Fourth, Defendants calculate the total damages at $5.72

26   million, and argue that attorney's fees at 25% of $5.72 million

27   would amount to $1.43 million in fees, or a total amount in

28

1   controversy of $7,150,000.[3]   The Court has already found that

2   evidence of $3.2 million for expense claims is speculative, that

3   evidence of $1.2 million for failure to provide wage statements is

4   unsubstantiated, and that it will not consider evidence of

5   Cal. Lab. Code § 2699(f)(2).   Defendants thus lack support for a

6   $1.43 million fee award being in controversy as the damages appear

7   to be less than their estimates.   Based on these same conclusions,

8   the Court finds that Defendants have failed to show by a

9   preponderance of the evidence that the amount in controversy

10  exceeds $5,000,000.   The Court is unable to base its jurisdiction

11  on questionable calculations and conjecture.

12      Finally, Defendant argues that the Southern District of

13  California has jurisdiction over similar class actions.   Here, the

14  Court reviews this case for jurisdiction independent of other cases

15  that may raise similar claims.   Once the Court concludes that it

16  lacks jurisdiction, then it does not have discretion to determine

17  whether transfer is appropriate.   If the cases before the Southern

18  District of California raise the same claims as this case, as

19

20      [3] Defendants also submit a settlement agreement from Bennett
21  v. Countrywide Financial Corporation.   The Bennett case involved
    expense reimbursement claims by a class of approximately 4,000 loan
22  consultants.   The case settled for $17.5 million.   The Court
    recognizes that settlements in similar cases may be probative of
23  the amount in controversy, but that the cases raise similar claims
    is not dispositive.   There may also be differences between cases
24  that undermine their probative value on the amount in controversy.
    First, other than asserting that Bennett and this case raised
25  similar claims, Defendants do not discuss reasons for concluding
    that this case will result in a similar outcome.   Second, this case
26  brings the claims of 1,150 class members, whereas the Bennett case
    included about 4,000 class members.   Thus, although the Bennett
27  case offers some evidence that expense reimbursement lawsuits may
    result in significant settlements, it is not clear from the other
28  evidence before the Court that this case is like Bennett in terms
    of the amount in controversy.

suggested by Defendant, then Defendant may be entitled to request
in the Southern District of California that any competing class
action lawsuits be enjoined. See In re Bridgestone/Firestone, Inc.
Tire Products Liab. Litig., 333 F.ed 763, 766 (7th Cir. 2003).
Having found that the amount in controversy has not been met, the
Court lacks jurisdiction.

**III. CONCLUSION**

    For the foregoing reasons, the Court REMANDS to state court.

IT IS SO ORDERED.

Dated: August 4, 2008

_____
DEAN D. PREGERSON
United States District Judge